[L. A. No. 29644. In Bank. Jan. 30, 1970.]

ALVIN C. WEINGAND et al., Plaintiffs and Respondents, v. ATLANTIC SAVINGS AND LOAN ASSOCIATION et al., Defendants and Appellants.

808

## COUNSEL

Fitzpatrick & Wiley, Griffith & Thornburgh and Chester M. Oksner for Defendants and Appellants.

Price, Postel & Parma, H. Clarke Gaines, Charles W. Willey, Lilian M. Fish and Timothy A. Whitehouse for Plaintiffs and Respondents.

## OPINION

**McCOMB, J.**—This is an appeal from an order dated June 20, 1967, granting a preliminary injunction restraining defendant Atlantic Savings and Loan Association from foreclosing a deed of trust on San Ysidro Ranch in Santa Barbara County. The only issue on appeal is whether the trial court abused its discretion in granting the preliminary injunction. This is the fourth time that this order has been before an appellate court. Trial on the main action has not yet been held.

The injunction hearing was held on the pleadings, affidavits and oral argument. The main thrust of the complaint was that certain defendants conspired to defraud, and defrauded, plaintiffs and that the gross negligence of defendant Atlantic Savings and Loan Association made the perpetration of this fraud possible, thus depriving plaintiffs of their security. The

prayer sought alternative forms of relief, including a declaration that Atlantic's deed of trust was void from the inception; that it was a cloud on title; that it should be delivered up for cancellation and the property reconveyed; that plaintiffs be declared and determined to receive the assets of defendant San Ysidro Ranch Corporation free and clear of Atlantic's deed of trust; and for "such other and further relief as the court may deem just, equitable and proper." At the hearing the contention was made that if Atlantic's deed of trust not be declared void, that it be declared junior in interest to plaintiffs' interest.

Plaintiffs, husband and wife, had for many years been the owners of all of the outstanding capital stock of San Ysidro Ranch Corporation and associated with the management of its principal asset, a 500-acre guest ranch and resort hotel. In July 1965 defendants Preston Kerr and Fleming Brokerage Co., a corporation, offered to buy all of plaintiffs' stock. Plaintiffs' counteroffer was accepted. It was conditioned upon a warranty that the financial statement furnished by Fleming Brokerage was accurate, and called for a purchase price of $583,000. The terms were the payment of $150,000 cash on consummation of the transaction; the execution of two promissory notes each in the principal sum of $190,989.18, each payable at the rate of $1,700 per month; the payment of plaintiffs' indebtedness to San Ysidro of $75,000; security for payment of the notes was a pledge of the stock of San Ysidro and, secondarily, a second deed of trust on other property. (The first deed of trust on that property was subsequently foreclosed, making plaintiffs' second deed of trust thereon valueless.) The Pledge Agreement provided that so long as any part of the indebtedness secured by it remained unpaid the corporation would not sell or lease its property or any substantial part thereof other than in the ordinary course of trade to pledgors or either of them; that the corporation would pay no dividends, except cash dividends which would be applied to the payment of the indebtedness to plaintiffs; that it would not pay salaries or other compensation to either pledgor or to any officer, etc. of Fleming Brokerage (with exceptions not here pertinent); and that pledgors would "not do or suffer any manner or thing whatsoever whereby the liens of this Agreement might or could be impaired until the obligation hereby secured together with all interest accrued thereon and all other claims hereunder shall be fully paid, satisfied and discharged." Plaintiffs did not request a security interest in the ranch property, relying on the pledge agreement and its limitations on the activities of San Ysidro.[1] The agreement was signed by defendant Carl Long as president of Fleming Brokerage, and by defendant Preston Kerr, secretary of Fleming Brokerage, as an individual. A policy of title

---

[1] They urged at the hearing before this court that to have sold the *assets* of the corporation at that time would have subjected them to "unreasonably harsh tax consequences."

insurance was recorded at 7:30 a.m. on September 23, 1965, which showed title to the ranch in San Ysidro. The next afternoon the stock transaction was completed, plaintiffs received some $140,000 cash and they delivered to these defendants the stock, corporate seal and records. Net worth of the stock at that time was $582,829.74. The land was appraised at $700,000.

Unknown to plaintiffs at the time the negotiations were going on and when they were consummated, and not discovered by them until some 17 months later when Kerr and Fleming Brokerage defaulted on their notes to plaintiffs and San Ysidro became insolvent, were the following facts. Long and Kerr had misrepresented to plaintiffs the financial condition and contingent liabilities of Fleming Brokerage Company. Fleming Brokerage was even then in serious financial difficulties and later became involved in much litigation. In early August 1965 Long and Kerr, without the knowledge or consent of plaintiffs, had applied to defendant Atlantic Savings and Loan Association for a sizable loan on the ranch. They were neither stockholders, directors, or officers of San Ysidro, and had no actual or ostensible authority to act in its behalf. They represented to Atlantic that Long was the president and authorized representative of San Ysidro and that defendant Romanik (their attorney in the stock purchase) was the attorney for the corporation. An undated Certificate of Organization Borrower (Atlantic's printed form) executed by Long only, with no corporate seal or other corporate signature attached, stated that he was the president of San Ysidro and was authorized to make the certificate for and on its behalf, for the purpose of obtaining a loan or loans, that Atlantic was entitled to rely thereon in making the loans applied for; and that "the substantial stockholders of said applicant, if it is a corporation, or the major owners of said applicant, if it is any other type of business entity, are as follows: Carl Long." This was executed under penalty of perjury. The borrowers' statement, executed by him, declared that "I expressly represent that I own or will purchase at the time your loan is completed the premises described [San Ysidro Ranch] in the deed of trust." Plaintiffs alleged, on information and belief, that spurious minutes were prepared by defendants, one purporting to be a stockholders' meeting held in Romanik's office by Fleming Brokerage and Kerr at which Carl Long, his wife Maria, and Gladys Frank were "elected" directors; and the other purporting to be a directors' meeting at which Long was "elected" president, Gladys Frank secretary and Romanik treasurer. Preston Kerr was "employed" as general manager and the corporation was "authorized" to borrow $825,000 from Atlantic and to give as security therefor a deed of trust, with assignment of rents, on the ranch as security.

On September 16, 1965, Long as "president" of San Ysidro executed a promissory note to Atlantic in the sum of $825,000 and executed a deed

of trust on the ranch as security therefor. Notarial certificate was attached that he was known to the notary to be president of San Ysidro. The papers had been prepared by Atlantic and forwarded to Romanik, as attorney for San Ysidro, for his approval and for due execution by the corporation. The only signature appended was that of Long. It bore no corporate seal. On September 24 it was redated and reacknowledged and bore a seal purporting to be that of San Ysidro. This transaction was completed and the deed of trust was recorded at 8 a.m. on the morning of September 24, 1965. *It was not until six hours later that same day that the stock transaction was completed* and the corporate seal, stock and books were transferred to Kerr and Long. No disclosure of any of these facts was made to plaintiffs.

The trust deed provided that it was security for the $825,000 loaned to San Ysidro and for future advances. $391,000 of the proceeds were directed to be paid into another escrow. The following month an additional $60,000 was advanced on the security of the trust deed. On November 30, 1965, the trust deed was reacknowledged by Long as president of San Ysidro and rerecorded. At the hearing the validity of the notarial certificate by Gladys Frank (who was apparently an officer of San Ysidro after defendants acquired it), was argued. On its face the certificate appeared to be valid. No evidence was adduced that subsequent stockholders' or directors' meetings had been held purporting to validate or ratify the acts of Long in negotiating for the loan and executing the trust deed. Reliance was apparently placed by Atlantic upon the rerecordation of the deed of trust. Validity of the notarial certificate and of the trust deed itself are of course issues going to the merits and cannot be determined on this appeal.

Subsequently Long and Kerr borrowed over $240,000 secured by trust deeds on the ranch property; some of the property was sold for delinquent taxes; the corporation was unable to pay its creditors, secured or unsecured; default occurred on the obligations to plaintiffs and to Atlantic; and the corporation property ceased to be operated as a guest ranch and resort hotel. Its use for this purpose was an antecedent nonconforming zoning use, and the zoning privilege was subject to being lost and the property restricted by current zoning regulations unless it continued to be operated as a guest ranch. Plaintiffs filed this action, secured a temporary restraining order and temporary appointment of a receiver to operate the ranch.

After a contested hearing on the order to show cause why a preliminary injunction should not issue, the trial court rejected Atlantic's offer to post a bond in lieu of an injunction, set the amount of the undertaking to be filed by plaintiffs to hold defendant Atlantic harmless pursuant to section

529 of the Civil Code at $10,000, and confirmed the appointment of the receiver during the pendency of the action. Atlantic appealed and also applied for a writ of prohibition. Prohibition was denied without opinion (Oct. 30, 1967, Div. 4, 2d Dist.). The appeal was decided on February 28, 1969 (2d Dist., Div. 3).[2] Instead of determining whether the trial court had abused its discretion in issuing the preliminary injunction, the appellate court remanded the proceedings to the trial court. It suggested that that court had probably misunderstood the offer of Atlantic with respect to the coverage of the bond it had offered to post in lieu of the injunction, and directed the trial court to permit Atlantic to furnish a surety bond in an amount to be fixed by the court, on conditions that Atlantic would conform to and comply with any and all obligations, duties and requirements in favor of and for the benefit of plaintiffs that might be imposed upon it by any final judgment in the main action. Hearing was granted by this court and the matter was retransferred to the Court of Appeal with directions *to consider it on the merits.* On July 25, 1969, the appellate court (Dist. 2, Div. 3) reversed the order granting the injunction. It[2] also denied plaintiffs' motion for leave to produce newly discovered additional evidence, offered under appellate rule 23, subdivisions (a) and (b), California Rules of Court.[3] The opinion held that plaintiffs had no standing to assert on behalf of the corporation any rights it might have to challenge the validity of the trust deed, that plaintiffs had not alleged a cause of action for redress other than in damages, that foreclosure of the trust deed would not cause them irreparable injury, and that the injunction was improperly granted. This hearing was granted. Plaintiffs have renewed their request for leave to produce additional evidence, have submitted requested findings based thereon, and request that this court affirm the order granting the preliminary injunction.

At the time of filing the complaint and the hearing on the preliminary injunction, plaintiffs had been unable to serve defendants Kerr or Long,

---

[2]Unpublished opinion.

[3]Rule 23. Findings and Additional Evidence on Appeal.

(a) [Request for findings] A request that the reviewing court make findings of fact shall contain a draft of the proposed findings, and may be made in a brief, or a separate application may be served and filed. If opposing counsel has not had an opportunity in his brief to object to the request, he may serve and file written opposition thereto.

(b) [Application to produce evidence] Proceedings for the production of additional evidence on appeal shall be in accordance with rule 41 [noticed motions]. The court may grant or deny the application in whole or in part, and subject to such conditions as it may deem proper. If the application is granted the court, by appropriate order, shall direct that the evidence be taken before the court . . . or before a referee appointed for the purpose. . . . Where documentary evidence is offered, either party may submit the original or a certified or photostatic copy thereof and the court may admit the document in evidence and add it to the record on appeal.

and discovery proceedings could not be completed. The deposition of the elusive Long was obtained in January 1969, that of Kerr in June 1969. The facts then discovered by plaintiffs had been known all along by Atlantic but had not been disclosed by it to plaintiffs or to the court.

Atlantic's loan documents showed the diversion of $391,000 of the proceeds of the original $825,000 loan (47½ percent) toward one other than the ostensible borrower, San Ysidro. In their first and second causes of action plaintiffs had alleged on information and belief that some of the proceeds had been applied to payment of previously outstanding loans of Fleming Brokerage or Long unrelated to said stock purchase. It now discovered that Atlantic had required, as a condition of making the loan to the corporation, that real estate in Azusa owned by Atlantic as the result of the foreclosure of a deed of trust thereon, be purchased and that $391,000 be applied on this purchase, that title to this Azusa property not be placed in the name of San Ysidro, that it be placed in the name of Fleming Brokerage, that Atlantic required Long's signature on the San Ysidro papers but would not accept that of Kerr. The Azusa property consisted of 27 four-plexes, carried by Atlantic at a value of $900,000, held by it as a scheduled item, "real estate owned" (R.E.O.). R.E.O.'s are required to be reported to the California Savings and Loan Commissioner and to the Federal Home Loan Bank.

The deposition of J. Robert Eichinger, vice-president of Atlantic, explains that an R.E.O. "deteriorates our lending capacity, because we are immediately restricted from borrowing from the Home Loan Bank . . . for loan expansion. . . . In addition to this, it affects the operation of a savings and loan, in that there are certain regulatory tests which are affected by the amount of scheduled items you have, and the degree of examination, the degree of control, if you will, placed upon the association by both the Federal and the State regulators, in the case of a State-chartered savings and loan association, grow as your scheduled items grow." He admitted that the Azusa four-plexes were R.E.O.'s at the time of the sale to Fleming, and that they were having an adverse effect on the operation of the association.

The deposition of Preston Kerr states "They were not interested in making a loan unless you purchased R.E.O.'s" and that Long had told him Atlantic would not make the loan on San Ysidro if they did not take these four-plexes. The deposition of Long indicates that Fleming Brokerage Co. was all owned by him until 1964 or 1965 when he put it into a family trust, but that he was the sole managing officer at the times pertinent hereto. When asked why the Azusa property was put in the name of Fleming Brokerage, he replied ". . . they [Cully, his broker, with whom he dealt] said they [Atlantic] didn't want to put them in San Ysidro."

When asked whether it was the deal between him and Kerr that they would borrow what they could and each would take half, he answered "Originally not. It could have ended up that way, where I told him I wouldn't take any more than half of what he had, and let him have the rest for operation" and that "I didn't get quite half." Kerr had testified that out of the $825,000 borrowed in the name of San Ysidro, only $40,000 was left in its hands, —which is about 4.8 percent of the sum borrowed! The Azusa property was repossessed by Atlantic after the tenants moved out due to massive leaks. Inferences can easily be drawn that Atlantic was highly motivated to get rid of this property. Plaintiffs urge that this positive action by Atlantic is more than mere negligence.

■ Plaintiffs allege that Atlantic's action in requiring and causing a diversion back to itself of $391,000 constituted a fraud on all creditors and shareholders of Atlantic and on all persons relying on the value of San Ysidro's stock; and that plaintiffs are within the class of persons so defrauded by Atlantic. Without passing upon this issue, it seems clear that this evidence has a direct bearing upon the charges of fraud, conspiracy and the validity of the instruments under attack in the principal action.
■ Atlantic's objection that plaintiffs had some notice of this diversion of funds prior to filing the complaint herein is answered by plaintiffs that all they had was hearsay information as to some of these facts, and that without further proof they could not charge them in their complaint against Atlantic. In view of Atlantic's obvious knowledge of these facts at all times, their objection on the ground of timeliness is not made with clean hands. Plaintiffs state that they will request leave of the trial court under section 473 of the Code of Civil Procedure to amend their complaint to incorporate these further allegations and charges of fraud against Atlantic.

Question: *One. Do the pleadings state sufficient facts to support the trial court's finding that a cause of action was stated against Atlantic?*

■ *Yes.* The causes of action stated and the facts recited are sufficient to present triable issues of fact as to negligence of Atlantic in advancing almost a million dollars to persons who were at that time impostors; whether this negligence was the proximate cause, or a proximate cause, of the injuries suffered by the corporation, (which was allegedly milked and left a corporate shell with insufficient assets to pay its many creditors); or of the injuries suffered by plaintiffs, as individuals or under derivative rights; and whether this negligence was the proximate cause of injuries suffered by plaintiffs from the fraudulent acts thus made possible, under plaintiffs' rights as members of a class (the public) for which federal and state regulation is made of savings and loan associations.

Question: *Two. Do plaintiffs have standing to bring this action against Atlantic?*

*Yes.* They were the original owners of all the stock in San Ysidro Corporation, they became pledgee owners of a security interest in this stock, and under their pledge agreement the pledgor-buyers were restricted in their dealings with the corporation until payment in full was made for this stock. Facts are alleged which show fraud in the inducement, by conspirators who had no intention to perform their agreement but used this transaction as a means of carrying out their fraudulent scheme to divert the corporate assets to their own use, and who through other fraudulent acts, as part of this conspiracy, allegedly obtained the very funds with which to consummate the stock transaction.

Although a corporation holds all the title, legal and equitable, to the corporate property and is theoretically the only proper party to sue for wrongful dealing with that property, courts of equity recognize the truth that stockholders are ultimately the only beneficiaries, and that the final object of suits by the corporation is to maintain the interests of the stockholders. Whenever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongful dealing with corporate property, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation *either actually or virtually* refuses to institute or prosecute such a suit, then in order to prevent a failure of justice, courts have allowed an action to be brought by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors, officers, and other persons; and in such case the corporation must be joined as a party or as a codefendant. (4 Pomeroy Equity Jurisdiction (5th ed.) § 1095.) San Ysidro was joined as a party defendant.

"Where . . . a corporation fails or refuses to act after proper demand, the stockholder's ultimate interest in the corporation is sufficient to justify the bringing of a 'propulsive' action, designed to set in motion the judicial machinery for the redress of the wrong to the corporation." (*Klopstock* v. *Superior Court,* 17 Cal.2d 13, 16 [108 P.2d 906, 135 A.L.R. 318]; *Reed* v. *Norman,* 152 Cal.App.2d 892 [314 P.2d 204]; 3 Witkin, Summary of Cal. Law (7th ed.) p. 2387.) A pledgee of corporation stock has such an interest in the stock to entitle him to be heard in a court of equity concerning the preservation and protection of the assets and property of the corporation, his rights in this respect being essentially the same as those of an owner of stock for the loss of corporate assets; and the loss of corporate assets results in a depreciation of the value of the stock and a consequent impairment of his security. (4 Pomeroy, *supra,* § 1096;

14 Am.Jur.2d, Corporations, § 562.) ■ It is immaterial whether the complainant has a large or small interest when the wrongful conduct which causes a stockholder to transfer or lose title to his stock is part of a course of conduct which also injures the corporation, so that evidence proving the wrong to the corporation will either alone or with other evidence establish the stockholder's right to recover his stock; he may maintain one suit in both his derivative and individual right. (14 Am. Jur.2d, Corporations, § 567.)

■ If plaintiffs as pledgees of all the stock cannot raise the validity of the trust deed given to Atlantic and the loss of corporate assets, who will raise it? Certainly not the defendants who perpetrated the fraud and who purportedly became legitimate stockholders and officers of the corporation only by reason of their own fraudulent conduct. Certainly not Atlantic the corporation that seeks to enforce the trust deed by foreclosure.

Question: *Three. Would foreclosure pending trial cause irreparable injury?*

■ *Yes.* Without the execution of the trust deed, the pledge agreement would not have come into being, and the impostors would not have had the opportunity to obtain and to dissipate the corporate assets. Foreclosure pending suit would render moot any claim of right of plaintiffs individually or derivatively to have the validity or invalidity of the trust deed determined. They are asserting a right to have the deed declared void as a cloud on title, set aside as a fraudulent conveyance, and to have a constructive trust in the land and assets of the corporation declared. They would have no rights as against a bona fide purchaser for value at the execution sale. The preliminary injunction would preserve their rights in *statu quo* until trial on the merits.

Question: *Four. Do plaintiffs have any plain, speedy or adequate remedy at law?*

■ *No.* Their secondary prayer is for monetary relief. There are various possibilities which might happen in the court action. The court might determine that Atlantic was not responsible to pay anything *to plaintiffs;* the court might determine that Atlantic lost its priority or had no security for its advance, and plaintiffs could not then obtain judgment against Atlantic for any money damages. In the complaint plaintiffs prayed for money damages against Atlantic. They admitted at the hearing that in the absence of being able to prove fraud against Atlantic they doubted if they could recover a money judgment against Atlantic. The other defendants are insolvent. The solvency of Atlantic would not help plaintiffs

if plaintiffs' only real redress is by securing a return of the assets of the corporation.

Question: *Five. Did the trial court abuse its discretion in issuing the preliminary injunction?*

 *No.* In *Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 527-528 [67 Cal.Rptr. 761, 439 P.2d 889], we held that " 'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion.' [Citation.] . . . 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.] . . . Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it' [citations]. In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. [Citations.] As was said in *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10], 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation]."

 It sufficiently appears that there were ample facts before the trial court from which it could make its determination, that it took into consideration the various factors to be estimated and weighed, and that no abuse of its discretion in issuing the preliminary injunction is shown.

The order granting the injunction is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.