[Civ. No. 39863. First Dist., Div. Three. May 24, 1977.]

SAN FRANCISCO POLICE OFFICERS ASSOCIATION et al.,
Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

COUNSEL

Thomas M. O'Connor, City Attorney, and Burk E. Delventhal, Deputy City Attorney, for Defendants and Appellants.

Stephen Warren Solomon and Richard Goldman for Plaintiffs and Respondents.

OPINION

**GOOD, J.***—In November 1975, the electorate of the City and County of San Francisco added section 8.345 to its charter. The section prohibits any uniformed member of the city's police and fire departments from instigating, participating in or affording leadership to a strike against the city and from engaging in picketing activity in furtherance thereof. If, after hearing as provided therein, an officer is found to be in violation thereof, he is to be immediately dismissed. The hearing must be held without delay and no officer, board or commission has power to grant amnesty to an employee charged with violating the section. A dismissal imposed under the section is not appealable to the civil service commission. The section goes on to provide that present and future members of said departments shall be given a copy of said section and "shall make under oath and file with the civil service commission" a declaration acknowledging receipt thereof and declaring that they will comply therewith.

On March 10, 1976, the chief of police issued a general order requiring police officers to comply with the oath provision. On March 12, the San Francisco Police Officers Association and Gerald A. Crowley, individually and as president of SFPOA (plaintiffs *post*) filed a complaint for declaratory and injunctive relief to restrain enforcement of said order and to restrain the city from expending funds to implement the oath provision of said charter section. It was alleged that the provision is invalid because it violates the prohibition of article XX, section 3 of the Constitution of the State of California. That section prescribes the form of oath which may be required of public officers and employees and deals with allegiance to the United States and to California and the

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

faithful discharge of duties by officers or employees. It then prohibits the requirement of any other oath, declaration or test as a qualification for office or employment. A motion for preliminary injunction was made and was granted on July 2. The city and its chief of police have filed this appeal therefrom.

■ Plaintiffs call our attention to the well-recognized rules that, absent an abuse of discretion, an appellate court may not interfere with an order granting a preliminary injunction (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512 [67 Cal.Rptr. 761, 439 P.2d 889]; *Weingand* v. *Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806 [83 Cal.Rptr. 650, 464 P.2d 106]); and, that a test of discretion is (a) whether or not greater injury will result to a defendant from granting a preliminary injunction (thus preserving status quo) than to a plaintiff from its refusal and (b) whether there is a reasonable probability the plaintiff will ultimately prevail in the litigation (*U. S. Hertz, Inc.* v. *Niobrara Farms* (1974) 41 Cal.App.3d 68, 79 [116 Cal.Rptr. 44]). It is argued that there can be no immediate injury to the city because it is protected by the section's prohibition of strike activity and imposition of the sanction of dismissal which the city could proceed to enforce whether or not a police officer had subscribed to the required oath. Injury to the city is said to be inconsequential as against an officer's being subjected to dismissal proceedings for merely refusing to accede to a demand that is prohibited by the Constitution. We are invited to merely affirm the order because there was no abuse of discretion and to avoid or postpone the substantive issue raised by the pleadings.

■ The city contends that the Constitution's prohibition applies only to other loyalty declarations and argues that the charter-required oath, rather than being a loyalty oath is merely a test of an individual's fitness to discharge the duties he is hired to perform. Its brief states that the oath is not an "affirmation or declaration [of fidelity] to an abstract . . . monarch or state" but only "seeks to protect the tangible and immediate interests of employers (i.e. the public) from default of specific employment obligations by employees charged with performing specialized and crucial public functions." Thus because the faithful and continuous performance of duties devolving upon policemen is of crucial importance, a willingness to abjure all strike activities is argued to go to job qualifications for such employment and for continuing therein.

The pleadings do not involve any issue of the right of public employees to strike or believe or contend that conditions of civil service or public employment may not proscribe some rights enjoyed by labor in the private sector. The complaint does not attack the prohibition of strike activity contained in the charter section. The sole issue presented· is whether or not the oath requirement violates California's Constitution in the manner alleged. The issue is one of law rather than of fact. The city's contention that in the interest of both parties, the narrow issue thus presented should be laid to rest at this time is reasonable.

An in-depth exploration of the historical background of the constitutional provision is unnecessary. Its course in California courts is ably summarized in 5·Witkin, Summary of California Law (1974 ed.) pages 3498-3504. Its antecedents in English history are elaborated in the decisions in *Rogers* v. *City of Buffalo,* 3 N.Y.S. 671 (pp. 673-674) and 123 N.Y. 173 [25 N.E. 274] (pp. 278-279), which were cited with approval in *Pockman* v. *Leonard* (1952) 39 Cal.2d 676 (p. 682) [249 P.2d 267]. But a brief review of *Pockman's* background is required because of the city's contention that despite its being overruled by *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961], it remains the law herein because *Vogel* turned upon First Amendment violations and here no such violations are alleged or argued.

The first paragraph of the oath authorized by article XX, section 3 derives from article XI, section 3 of the Constitution of 1879, which applied only to members of the Legislature and executive and judicial officers. In 1950, the Legislature enacted sections 3100 to 3109 of the Government Code (Levering Act) which declared that all public employees were "civil defense workers" and were required to subscribe to an oath the first paragraph of which was identical with that in the 1879 Constitution. The second paragraph abjured the advocacy of force or violence to overthrow the government and required disclosure of membership, if any, in an organization or party advocating such. (Stats. 1951, Third Ex. Sess. 1950, ch. 7, p. 15.) In 1952, article XX, section 3 of the Constitution superseded the 1879 provision and the form of oath set forth therein added the second paragraph as contained in the Levering oath. The 1879 constitutional prohibition against other oaths was carried over into article XX, section 3 as follows: "And no other oath, declaration, or test, shall be required as a qualification for any public office or employment."

Just prior to the 1952 election at which article XX, section 3 was adopted, *Pockman, supra,* held that the Levering oath was valid in its entirety and that the oath's second paragraph did not violate the prohibition of the Constitution because it did not involve religious or political opinions and was "not the type of 'other oath, declaration, or test' which was intended to be prohibited by that [constitutional] section." (*Id.,* 39 Cal.2d p. 686.)

■ The California Supreme Court in *Tolman* v. *Underhill* (1952) 39 Cal.2d 708 [249 P.2d 280] held that the constitutional provision and implementing legislation (Gov. Code, §§ 1360-1369 [Oaths of Public Officers] and §§ 3103-3109 [oaths for public employees]) preempt the field. At page 713, the court said: "As we have already seen, the Legislature has enacted a general and detailed scheme requiring all state employees to execute a prescribed oath relating to loyalty and faithful performance of duty, and it could not have intended that they must at the same time remain subject to any such additional loyalty oaths or declarations as the particular agency employing them might see fit to impose. Multiplicity and duplication of oaths and declarations would not only reflect seriously upon the dignity of state employment but would make a travesty of the effort to secure loyal and suitable persons for government service." The first paragraph of the oath authorized by the Constitution which since the promulgation of *Vogel, supra,* is the only valid paragraph, has two aspects: It separately deals with loyalty to the United States and California Constitutions ("to support and defend" and "true faith and allegiance bear") and with the performance of duties of office or employment ("to well and faithfully discharge.") Although *Tolman* referred to "additional loyalty oaths" the language of the Constitution compels the conclusion that the Constitution and the said Government Code sections preempt the field as to both aspects of the constitutional oath.

In the history of law, an oath has been considered to be "a religious act by which a party invokes God not only to witness the truth and sincerity of his promise, but also to avenge his imposture or violated faith [and] punish his perjury if he shall be guilty of it." (Black's Law Dict. (3d ed.).) Although its religious significance may be diluted in a predominately secular society and not present at all when the attestation is made by affirmance, it remains an appeal to an individual's conscience which, except for clear, immediate and compelling reasons of security, has always been regarded as inviolable. America's dedication to principles of

religious freedom and separation of church and state are thus involved in the limitation on the use of oath as framed in the constitutional provision.

■ We have noted that plaintiffs raise no issue as to the validity of the substantive provisions of the charter section, which are, of course, severable from the oath requirement. They do not argue that a city may not condition employment or continued employment in its police and fire departments upon a commitment not to engage in strike activity.[1] Their sole attack is upon the clause which requires an oath acknowledging receipt of a copy of the section and declaring that the employee will comply therewith. Conceding a public employer's right to posit that condition it does not follow that it may exact an oath therefor.

To secure the faithful performance of duties of office or employment, the Constitution authorizes an oath in that language. The city's argument that it is a dereliction of duty for an employee of the police or fire department to withdraw his services by way of a strike defeats itself, because it demonstrates that the required oath goes to the performance of duties of employment which is covered by the second aspect of the constitutional oath. As to this aspect, the import of the constitutional prohibition of additional oaths is unambiguous; no other oath may be required by sovereignty.

The order granting the preliminary injunction is affirmed.

Draper, P. J., and Scott, J., concurred.

---

[1]Although the Supreme Court in *In re Berry* (1968) 68 Cal.2d 137, 151 [65 Cal.Rptr. 273, 436 P.2d 273] refused to determine the question "whether strikes by public employees can be lawfully enjoined," the decision in *Trustees of Cal. State Colleges* v. *Local 1352, S.F. State etc. Teachers* (1970) 13 Cal.App.3d 863, 867 [92 Cal.Rptr. 134], held that a strike by public employees absent specific statutory authority, is illegal.