[Civ. No. 41274. First Dist., Div. One. Mar. 29, 1979.]

KENNETH KUNZA et al., Plaintiffs,
Cross-defendants and Respondents, v.
DUANE U. GASKELL et al., Defendants,
Cross-complainants and Appellants.

**COUNSEL**

James V. Jones for Defendants, Cross-complainants and Appellants.

Brian R. Silver for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**ELKINGTON, J.**—Kenneth Kunza and Pamela Mae Kunza, his wife, to whom for convenience we shall hereafter refer in the singular as Kunza, commenced an action against their neighbors, Duane U. Gaskell and Betty J. Gaskell, his wife, whom for similar reasons we shall describe as Gaskell. It concerned the boundary line dividing their respective properties. By the action Kunza, among other things, sought to eject Gaskell from, and to quiet title to, a strip of land which Gaskell had entered upon, and damages for the latter's trespass. By his cross-complaint Gaskell sought to quiet title to the disputed land in himself. The superior court entered judgment for Kunza. Gaskell has appealed from the judgment, and from an order denying a new trial.[1]

We have read the voluminous record and the briefs of the respective parties. We conclude not only that the judgment of the superior court must be affirmed but additionally, that the appeal is frivolous. (See rule 26(a), Cal. Rules of Court.) We state our reasons as required by the state's Constitution, article VI, section 14.

There is little, if any, disagreement as to the material facts of the case.

In 1911, a map of "O'Neil's Subdivision" at Angwin, Napa County, was filed in the recorder's office of that county. Some of the lines of the map "did not close," and its boundary markers and surveyor's monuments were soon obliterated. In 1936 two parcels were carved out of one of the subdivision's lots and conveyed to separate owners. The northern parcel was roughly one and one-half acres in size and the southern, about an acre. Across one or the other of them or at their common boundary line, and running in a general east-west direction, a fence was constructed. The circumstances under which the fence was built were at all times unknown to the parties to the action or the witnesses produced by them at the trial. The structure will hereinafter be referred to simply as the fence.

Seven years later, 1943, one Perrin acquired the southern parcel. He believed the fence to mark the two parcels' common boundary. After several successive conveyances Kunza, in 1973, became the southern parcel's owner. Part or all of his home was built within 40 feet, and to the

---

[1]The appeal from the order denying a new trial, a nonappealable order (see Code Civ. Proc., § 904.1; *Fogo v. Cutter Laboratories, Inc.*, 68 Cal.App.3d 744, 748-749 [137 Cal.Rptr. 417]), will be dismissed. And we note that Gaskell makes no contention in reference to it.

south, of the fence. During the same period, and until 1972, the northern parcel was also held by successive owners, each of whom believed the fence to mark the common boundary. Throughout the entire 30-year period, 1943 to 1973, each of the successive and respective owners treated the fence as the boundary, and acquiesced in his neighbor's use of the land up to the other side of it. And during the same period, each of them was assessed for, and paid taxes on, the land up to his side of the fence. (It is notable that Gaskell concedes, as he must, "that the fence had generally been accepted as the boundary line between the predecessors in title of Appellants and Respondents until Appellants took title to their parcel . . . .") The fence had been "maintained intact," while other fences in the vicinity had not.

In 1973, about two months after Kunza had acquired his parcel and without warning, Gaskell, using earth-moving equipment, destroyed the greater part of the fence and a stand of trees alongside it on the south side. He claimed 40 feet of land paralleling the fence, which included Kunza's home, and he parked automobiles and otherwise asserted ownership rights throughout that area.

Prior to, or following, the above described entry Gaskell had caused three surveys to be made in respect of the parcels' common boundary. Each reached a different result and Gaskell, dissatisfied, filed complaints against the maker of the *second* survey and perhaps one or both of the others, with the State Board of Registration for Professional Engineers. But in respect of his southern boundary Gaskell chose nevertheless to rely upon the *second* of the surveys. That survey was thoroughly discredited at the trial; indeed on his appeal Gaskell places no reliance upon it, nor does he even mention it. Although it purported to bring the boundary line 40 feet south of the fence as claimed by Gaskell, it was based upon "interpretations" of, and "departures" from, the "courses and distances" of the parties' deeds and the subdivision map. And, remarkably, it placed half of Gaskell's house on land of another landowner to the west. (The trial court found none of the surveys to be "accurate or reliable or completed . . . .") Because of the missing markers and monuments and the subdivision map's defects, the cost of a reliable survey would have far exceeded the value of the two parcels of land at issue.

On his appeal Gaskell refers to *no evidence whatever* supporting his trial contention that he had title to the 40-foot strip immediately south of the fence. Particularly, he places no reliance on *any* of the several surveys made under his direction. The reason seems clear, for our

examination of the record also reveals no credible evidence upon which such a contention might conceivably be based. Instead, Gaskell's appellate argument goes no further than to insist that the evidence casts doubt on whether the fence was, or was intended to be, placed upon the parties' common boundary line.[2]

■ We first consider the well-known principle tersely codified by Code of Civil Procedure section 902 (formerly § 938) as: "Any party *aggrieved* may appeal in the cases prescribed in this title." (Italics added.) The rule is strictly applied by reviewing courts which hold generally that only *aggrieved* parties may appeal. (See *Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 273 [42 Cal.Rptr. 89, 398 P.2d 129]; *People* v. *West Coast Shows, Inc.,* 10 Cal.App.3d 462, 467 [89 Cal.Rptr. 290]; *Radunich* v. *Basso,* 235 Cal.App.2d 826, 829 [45 Cal.Rptr. 824]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 118, p. 4117.) "That a party shall be aggrieved by a judgment or order is . . . a condition upon which the right to appeal depends. When, therefore, it is obvious to a trial court that an individual who proposes to prosecute an appeal is not aggrieved by the order from which it is proposed that the appeal be taken, the trial court is certainly justified in refusing to lend its assistance to an act which is obviously idle and futile." (*Russell* v. *Weyand,* 5 Cal.App.2d 259, 266-267 [42 P.2d 381].)

The rule has consistently been applied in quiet title and ejectment actions, such as that before us. We quote from some of the authorities. " 'Since plaintiff was legally possessed of no title to the property in question, he is in no position to complain of the relief which was granted to defendant in quieting his title thereto.' " (*Gottstein* v. *Kelly,* 206 Cal. 742, 749 [276 P. 347].) "[I]t appears that said Emerson as administrator has no interest whatever in the property and hence he has not been aggrieved by the judgment of dismissal." (*Miller* v. *Oliver,* 54 Cal.App. 505, 506 [202 P. 172].) "The plaintiffs having failed to show either title or possession in themselves, they 'cannot complain that someone else, also without title, asserts an interest in the land. . . . A defendant in such an action may always effectually resist a decree against himself, by showing simply that the plaintiff is without title.' . . . And, having shown no interest in the land, the plaintiffs are not aggrieved by a judgment declaring someone else to be the owner." (*Rockey* v. *Vieux,* 179 Cal. 681, 683 [178 P. 712]; *California Pub. Improv. Securities* v. *Porter,* 121

[2]The judgment also awarded Kunza $500 and the cost of a new fence as damages for the destruction caused by Gaskell's trespass. No contention is made that these damages were excessive or that, assuming arguendo Gaskell's trespass upon Kunza's land, they were otherwise improper.

Cal.App. 670, 675 [9 P.2d 877].) "Having no interest in the property themselves the appellants are in no position to attack the judgment in favor of the respondent upon grounds which perhaps might have been, but were not, raised by some of the defaulting defendants, who were the real parties affected thereby." (*Von Gal-Scale* v. *Cottrell,* 2 Cal.App.2d 29, 31 [37 P.2d 715].)

■    Here, as noted, Gaskell presented no credible evidence in the superior court, and on appeal he relies upon no evidence, of ownership of any land south of the fence. Lacking such an interest, and therefore a "grievance," he will not be heard to complain of the judgment ousting him from the land and quieting its title in Kunza. And since, as pointed out (see fn. 2, *ante*), he makes no complaint insofar as it awards damages for trespass, the judgment will be affirmed.

But we continue with other reasons for the conclusions we have reached.

■    Few principles of our law are more "fundamental [than] that a party who would quiet his title must prevail, if at all, on the strength of his own title and not on the weakness of the claims of an adversary." (*Hudson* v. *West,* 47 Cal.2d 823, 831 [306 P.2d 807]; see also *Millyard* v. *Faus,* 268 Cal.App.2d 76, 82 [73 Cal.Rptr. 697]; *Potter* v. *County of Los Angeles,* 251 Cal.App.2d 280, 284-285 [59 Cal.Rptr. 335]; *Hoeller* v. *Lloyd,* 173 Cal.App.2d 777, 778 [343 P.2d 929]; *Wales* v. *Davies,* 147 Cal.App.2d 420, 422 [305 P.2d 291].) The rule is equally apposite to an appealing defendant and cross-complainant (as here) of a quiet title action; as said in *Clay* v. *Saute,* 140 Cal.App.2d 681, 687-688 [295 P.2d 914]: "A further consideration, insofar as this appellant is concerned, is that a party to a quiet title action must rely on the strength of his own title and not on any weakness in that of his adversary. No evidence was introduced or offered which would in any way tend to indicate that this appellant was equitably entitled to any interest in this property."

■    These principles demonstrate further the obvious invalidity of Gaskell's appeal.

It is next noted that Kunza's complaint alleged, and undisputed trial evidence established, all of the elements of an action for ejectment including Kunza's possession of, and Gaskell's trespass upon, the land south of the fence. As pointed out, Gaskell produced no evidence of title or other right to that land.   ■    We here assume, but arguendo only,

that Kunza also had produced no evidence of title. In such a context Kunza's *possession* conferred upon him "a title sufficient against all," including Gaskell, unable to establish a superior claim. (See Civ. Code, § 1006.) It gave "rise to a presumption of ownership that must prevail in the absence of any other evidence of title." (*People* ex rel. *Dept. Pub. Wks.* v. *Shasta Pipe etc. Co.,* 264 Cal.App.2d 520, 534 [70 Cal.Rptr. 618] [disapproved on other grounds *Merced Irrigation Dist.* v. *Woolstenhulme,* 4 Cal.3d 478, 495 (93 Cal.Rptr. 833, 483 P.2d 1)]; and see Evid. Code, §§ 637, 638; *Syme* v. *Warden,* 114 Cal.App. 707, 711-712 [300 P. 863]; Witkin, Cal. Evidence (2d ed. 1966) §§ 231, 232; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 9, pp. 1779-1780 ("even though he has no title [he] may maintain ejectment against an intruder"); 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 524, p. 2175.)

■ Insofar as the judgment purported to eject Gaskell from the land south of the fence there was manifestly neither error nor a valid appeal.

We come now to the hotly debated trial issue of "agreed boundary," which was resolved in Kunza's favor. In doing so we indulge, again arguendo, Gaskell's wholly unsupported contention that he had a recorded right to property south of the fence.

■ In reference to such an issue the state's high court said in *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707-708 [336 P.2d 525]: "The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. . . . The doctrine requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position. It is not required that the true location be absolutely unascertainable . . . ; that an accurate survey from the calls in the deed is possible . . . , or that the uncertainty should appear from the deeds . . . . The line may be founded on a mistake. . . . [¶] The court may infer that there was an agreement between the coterminous owners ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between their lands. . . . It may be inferred that there was an uncertainty as to the true line at the time the structures were erected, which uncertainty was settled by practical location on the ground at that time and was agreed to by the then coterminous owners. It may also be inferred that the uncertainty arose after the improvements were constructed and that the coterminous owners, by acceptance and acquies-

cence, agreed that the easterly boundary of these structures constituted the true boundary line between their properties. There is no evidence that the defendant's predecessor did not act in good faith. The acquiescence of the adjoining owner continued for a period longer than the statute of limitations and also under such circumstances that substantial loss would be caused to the defendant by a change of position of the boundary line." (See also the authority there cited, and the more recent cases of *Minson Co.* v. *Aviation Finance*, 38 Cal.App.3d 489, 496 [113 Cal.Rptr. 223], and *Vella* v. *Ratto*, 17 Cal.App.3d 737, 740-742 [95 Cal.Rptr. 72].)

"The word *'uncertainty'* is used in the statements of the rule in the decisions to convey the idea that at the time of the location of the division line neither of the coterminous owners knew the true position of the line on the ground." (*Nusbickel* v. *Stevens Ranch Co.*, 187 Cal. 15, 19 [200 P. 651]; italics added.)

" 'The belief of the parties for the long period of thirty years following the location, as shown by the findings, is a sufficient reason for the application of the doctrine, so far as that state of mind [i.e., uncertainty] is essential thereto. The fact that it was founded on a *mistake* always appears, and must appear, else there would be no occasion to invoke the doctrine.' " (*Mello* v. *Weaver*, 36 Cal.2d 456, 462 [224 P.2d 691]; italics added.)

And it has been consistently held that a "dispute or controversy is not essential" to the required "uncertainty." (See *Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460; *Zachery* v. *McWilliams,* 28 Cal.App.3d 57, 61-62 [104 Cal.Rptr. 293].) "We think the *dispute* a false quantity" (*Helm* v. *Wilson,* 76 Cal. 476, 485 [18 P. 604]); "The finding of a *dispute* between said former owners was perhaps scarcely sustained by the evidence, *but it is immaterial*" (*Thaxter* v. *Inglis,* 121 Cal. 593, 594 [54 P. 86]; italics added).

Gaskell's argument in the case before us "that there had never been a *dispute* concerning the true boundary between the two parcels in question" (italics added) is without relevance or meaningful substance.

Nor may Gaskell reasonably rely upon *Clapp* v. *Churchill,* 164 Cal. 741 [130 P. 1061], and some cases following that authority, which are interpreted by some as holding that although "uncertainty" will be presumed from long acquiescence, upon evidence to the contrary the presumption of uncertainty will fall. The contrary evidence here, Gaskell tells us, is testimony of four former owners of Kunza's property (the first

acquired title in *1943*) who said there was no "uncertainty" whether the fence was on the property's boundary line. (We find no such testimony in the record at the points referred to by Gaskell, or elsewhere.) Assuming such evidence and accepting his interpretation of *Clapp* v. *Churchill,* Gaskell is not aided thereby. Uncontroverted evidence established that the fence was erected five to ten years before *1943.* The witnesses patently had no knowledge whether there was "uncertainty" as to the true boundary of the two parcels when the fence was built, and the long acquiescence in it as the boundary marker had commenced. And of course, to the extent, *if any,* that *Clapp* v. *Churchill* is in disagreement with *Ernie* v. *Trinity Lutheran Church, supra,* 51 Cal.2d 702, 707-708, it will be deemed disapproved by that later authority of the same court. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 692(2), pp. 4608-4609.)

■ It will thus be seen that, without conflict, all of the essentials of an agreed boundary were manifested by the record, and by uncontroverted evidence.

We inquire now whether the record, and the law, support the superior court's conclusion that Kunza and his predecessors in interest had, in any event, acquired title to the parcel south of the fence by adverse possession, according to Code of Civil Procedure sections 322-324. (Here also we indulge, arguendo, in Gaskell's claim of right to land south of the fence.)

■ The requirements of those statutes may be condensed as follows: "(1) The possession must be actual occupation, open and notorious, and not clandestine. (2) It must be hostile to the true owner's title. (3) It must be held under a claim of title, exclusive of any other right, as one's own. (4) It must be continuous and uninterrupted for a period of five years prior to the commencement of the action, not, however, necessarily the next before the commencement of the action. (5) It must appear that the claimant has paid all taxes levied or assessed upon the land. As a general rule there must be a concurrence of all these elements." (*Comstock* v. *Finn,* 13 Cal.App.2d 151, 155 [56 P.2d 957].)

■ "The requirement of 'hostility' . . . means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, 'unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter.' . . . 'Title by adverse possession

may be acquired through [*sic*] the possession or use commenced under mistake.' " (*Sorensen* v. *Costa,* 32 Cal.2d 453, 459, 460 [196 P.2d 900].)

■ Under this authority the record conclusively establishes (continuing in our arguendo assumption of a previous title to land south of the fence in Gaskell or his predecessors in interest) that Kunza held title thereto by adverse possession.

Gaskell's insistence that the evidence discloses an intent of Kunza, and his predecessors, "to claim only to the occupier's true property line, wherever it may be," distorts the record. He refers to the testimony of two of Kunza's predecessors. One testified: "I claimed the fence line to be the boundary line," and that he recognized the right of no "person to the south of the fence." The other said, "[T]he only thing I felt certain about was there were physical dimensions as a result of the Tax Assessor's map." (As noted, that map had fixed the property's boundary line *at the fence.*)

Rule 26(a), California Rules of Court, provides that: "Where the appeal is frivolous . . . or where any party . . . has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending . . . parties such penalties . . . as the circumstances of the case and the discouragement of like conduct in the future may require."

Where an "appeal is manifestly frivolous" appellants "should pay respondents such damages as may be just." (*Dysert* v. *Weaver,* 46 Cal.App. 576, 578 [189 P. 492].) " 'Our experience teaches that the only way to discourage frivolous appeals . . . is by the use of our power to award damages, . . .' " (*Huber* v. *Shedoudy,* 180 Cal. 311, 316 [181 P. 63].)

Here Gaskell at the trial produced no substantial evidence, indeed no evidence, supporting his claim of title to, or his entry upon, land south of the fence. And on his appeal he makes no contention to the contrary. The superior court's judgment was in all respects supported by the evidence and by the law. Gaskell was, as we have pointed out, patently not "aggrieved" by the judgment. As a reasonable person, he could not conceivably have anticipated a successful appeal. As a result of the appeal, Kunza was improperly and unnecessarily subjected to continuation of the mental and emotional strain, and financial drain, attending the litigation. And this busy court has been burdened with a frivolous appeal to the prejudice of other litigants awaiting in their turn our attention.

From a consideration of all of the relevant circumstances we are of the opinion that a penalty should be assessed against Gaskell in the amount of $1,500.

The judgment is affirmed. The trial court will have continuing jurisdiction in respect of the judgment's direction that defendants Gaskell pay "the reasonable cost of repairing and reconstructing [the] fence, . . ." The defendants Gaskell will be taxed, as additional costs of appeal, a penalty of $1,500 in favor of plaintiffs Kunza, for taking a frivolous appeal. The appeal from the order denying a new trial is dismissed.

Racanelli, P. J., and Newsom, J., concurred.