[Civ. No. 68671. Second Dist., Div. One. Feb. 17, 1984.]

MARK L. BENNETT, Plaintiff and Respondent, v.
KITTONG LEW, Defendant and Appellant.

**COUNSEL**

Jack Dunaway and Stanley Y. Lew for Defendant and Appellant.

Peter D. Gordon for Plaintiff and Respondent.

**OPINION**

**LILLIE, Acting P. J.**—Defendant appeals from an order granting a preliminary injunction requiring him to remove a fence dividing his driveway from the adjoining driveway of plaintiff.

Plaintiff owns and manages a four-unit apartment building in the Angeleno Heights district of Los Angeles. Defendant owns a 38-unit apartment building immediately north of plaintiff's building. These neighboring structures are separated by adjoining driveways which were undivided by any barrier until August 20, 1982. Plaintiff stated in his declaration that each of his units was rented with provision for two parking spaces, one in the rear

parking lot and one in the driveway nearest his building; that for approximately six years, he, his tenants and their guests have used his driveway for parking and have used defendant's adjoining driveway whenever necessary as a right of way for ingress and egress to plaintiff's rear parking lot. On July 21, 1982, defendant attempted to construct a fence to divide the two driveways, thereby preventing the above-described use; that at that time, plaintiff advised defendant and his workmen of his claim to an easement over defendant's driveway, construction was halted, the parties retained attorneys, and negotiations began to resolve the dispute; and that on August 20, 1982, defendant had the fence constructed, and on the same day, plaintiff filed the within action seeking to quiet title to a prescriptive easement over defendant's driveway, and seeking a temporary restraining order, a preliminary injunction and a permanent injunction requiring defendant to remove the fence and to refrain from interfering with or obstructing plaintiff's use of the easement. The temporary restraining order was denied. Plaintiff's application for preliminary injunction was heard on September 8, 1982. After consideration of the declarations and verified pleadings, the court ordered the preliminary injunction to issue. The order was to take effect upon plaintiff's filing a bond in the sum of $10,000; the bond was filed; however, execution of the mandatory injunction was automatically stayed by the filing of this appeal. (Code Civ. Proc., § 916.)

I

SUFFICIENCY OF THE EVIDENCE

Appellant contends there is not sufficient evidence to sustain the preliminary injunction, inasmuch as the facts are in dispute and contested. Our review is limited to the determination whether the trial court abused its discretion: " ' ' "The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion." ' " (*Weingand v. Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 820 [83 Cal.Rptr. 650, 464 P.2d 106].) The substantial evidence rule applies, and we interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order. (*Volpicelli v. Jared Sydney Torrance Memorial Hosp.* (1980) 109 Cal.App.3d 242, 247 [167 Cal.Rptr. 610].)

The principles governing the trial court's determination are clearly set forth in *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 [67

Cal.Rptr. 761, 439 P.2d 889]: ■ " 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or should not be restrained from exercising the right claimed by him.' . . . ■ Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to defendant from granting the injunction than to the plaintiff from refusing it; . . .' . . . In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights."

The ultimate right in controversy in the present case is the easement by prescription over appellant's driveway. ■ Respondent, as the party asserting the claim, has the burden of proof as to all the elements of a prescriptive easement: open, notorious, continuous adverse use of the easement under claim of right for a period of five years. (*Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422, 430-431 [114 Cal.Rptr. 380]; Civ. Code, § 1007; Code Civ. Proc., § 321.)

■ The court received in evidence the declarations of respondent, four of his tenants, and three persons who worked on respondent's premises. The declarants stated they had observed cars parked regularly in respondent's driveway necessitating the use of appellant's driveway for ingress and egress to the rear of the premises and that they had personally used appellant's driveway for such purpose. Also received was the declaration of a developer of a condominium complex across the street from respondent's building; he stated he had observed the use of appellant's driveway by respondent and his tenants and that such use was necessary because respondent's driveway had cars parked in it. Although not each declarant could testify as to such use for the entire five-year period required to establish a prescriptive easement, the declarations collectively covered the time period from September 1976 to the date of the hearing, a period of six years. Additionally, respondent in his declaration stated he had not discussed this use with appellant prior to the date on which appellant first attempted to build the fence, thus precluding an inference of permissive use. Respondent presented ample evidence of open, notorious and continuous adverse use of appellant's driveway for a five-year period. Appellant's rebuttal to this showing included his own declaration and those of eleven of his tenants, each stating that prior to March or April of 1982, they "never saw, noticed or observed any tenants or owners of these two houses use our south driveway at any time by driving over it or any portion thereof, with a car."

██ "[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts." (*Monogram Industries, Inc.* v. *Sar Industries* (1976) 64 Cal.App.3d 692, 704 [134 Cal.Rptr. 714].) ██ The trial court in the present case observed: " . . . I am convinced for the purpose of this hearing that for a number of years the tenants of plaintiff's building have been parking their cars alongside the plaintiff's building and that to get to the rear of the building other people have had to go around. [¶] Nobody has ever given me any flat statement that that is not true. They just said they have never seen anybody doing this." Rather than deciding that one party was telling the truth and the other was not, the trial court found it possible to believe all the declarations to be true "on the theory that the passing of the car, particularly just driving down past four other cars, is no big deal. You know, it's a ten-second trip or something like that. It's a transitory thing that can very well not have been noticed by people, so that I could believe both sides." There was sufficient evidence before the trial court to support a determination that respondent had a reasonable probability of prevailing at a trial on the merits on the issue of the existence of a prescriptive easement.

Appellant specifically draws our attention to a lack of evidence of the required actual or constructive notice of the adverse use. ██ The requisite elements for a prescriptive easement are designed to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use, and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement. (*Zimmer* v. *Dykstra, supra,* 39 Cal.App.3d 422, 431.) The Supreme Court described the proper approach to this issue in *O'Banion* v. *Borba* (1948) 32 Cal.2d 145, 149-150 [195 P.2d 10]: "The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. . . . For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements. ██ In the appellate court the issue is merely whether there is sufficient evidence to support the judgment of the trial court." (See also *Twin Peaks Land Co.* v. *Briggs* (1982) 130 Cal.App.3d 587, 593 [181 Cal.Rptr. 25].) ██ The trial court found the circumstances proved justified an inference of the required elements; we conclude there is sufficient evidence to support that decision.

██ The second requirement for the grant of a preliminary injunction is the balancing of the equities. In the last analysis the trial court must deter-

mine which party is the more likely to be injured by the exercise of its discretion and it must then be exercised in favor of that party. (*Weingand v. Atlantic Sav. & Loan Assn., supra,* 1 Cal.3d 806, 820.) The Supreme Court in *Dolske* v. *Gormely* (1962) 58 Cal.2d 513, 520-521 [25 Cal.Rptr. 270, 375 P.2d 174], discussed the relevant considerations in making this decision:[1] "Involved herein is the 'relative hardship doctrine' [citations], wherein a court in determining whether a mandatory injunction should issue ordering removal of encroachments, must consider various factors including the good faith of the party who constructed the encroachments [citation], and the proportionate hardships to the parties. [Citation.] Also relevant is a plaintiff's delay in seeking the mandatory injunction [citation], and whether such a plaintiff will suffer irreparable injury from the encroachments."

■ Applying these factors to the present case, we note appellant and respondent were engaged in settlement negotiations at the time appellant had the fence constructed. The only purpose the fence served was to prevent respondent and his tenants from using appellant's driveway. By constructing the fence, appellant seized the position he had not reached through the settlement negotiations, changed the status quo of the past thirty years of an undivided driveway, and totally deprived respondent of the established use of his own driveway for parking by preventing use of the adjoining driveway for ingress and egress. No inference of good faith can be drawn from appellant's construction of the fence. Respondent did not delay in seeking injunctive relief; he filed his action the same day appellant constructed the fence.

As to the proportionate hardships to the parties, the declarations submitted by respondent describe the concerns of his tenants for their own safety and the safety of their cars if they had to rely on street parking in the high risk area in which the building is situated. Respondent stated he feared he would lose his tenants or be forced to reduce their rents because of the reduced parking which would be caused by denial of the injunction. Risk of harm to persons and property and loss of tenants are injuries which cannot be measured in damages. Appellant's claim of detriment from the granting of the injunction, aside from the cost of removing the fence, was the possibility of a collision in the driveway if tenants from respondent's building happened to "flip off" respondent's property into appellant's driveway, yet the court observed there was no evidence of any such close encounters. There was

---

[1] The encroachments in question in the *Dolske* case included a porch pillar, roof eaves and other structures. The court found no evidence of bad faith in the construction of the encroachments, a delay of eight years before the injunction was sought, the disproportionate cost of removal as compared to the merely nominal damage to the property, and no irreparable injury. The grant of the mandatory injunction in that case was reversed.

sufficient basis for the court's exercise of its discretion in respondent's favor.

## II

### MANDATORY NATURE OF INJUNCTION

 Appellant makes much of the fact that the injunction requires him to perform an affirmative act, removing the fence. He is correct in his assertion that mandatory preliminary injunctions are not readily granted. But as noted by Witkin: "The modern approach to discretion in this area is that the court need not decide wholly for the plaintiff or the defendant. It may grant partial injunctive relief; it may impose terms and conditions on the relief granted; and it may substitute its own form of relief for the one demanded by the plaintiff." (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 82, p. 1520.) The trial judge followed this modern approach; he granted the preliminary injunction but required respondent to post a $10,000 bond, explaining: "The reason the bond is that high is because of the cost of the fence and the conflicting nature of the evidence." If appellant prevails at trial, monetary damages will compensate him for the cost of removing and then replacing the fence. Respondent cannot be so readily compensated by an award of damages for the risk of harm to persons and property and the potential loss of tenants. We find no abuse of discretion.

## III

### DOCTRINE OF UNCLEAN HANDS

 Appellant also contends the court abused its discretion in granting the preliminary injunction as respondent had unclean hands and thus should have been denied equitable relief. Appellant described in his declaration an incident on July 21, 1982, when he and his workmen undertook the building of the fence which gave rise to this dispute. He claimed respondent yelled and screamed at them to stop the construction, then picked up tools and threw them in their direction; as a result of respondent's alleged conduct, work was halted.

 It is a fundamental principle of equity that he who comes into equity must do so with clean hands. "[Plaintiff's] hands are rendered unclean within the purview of the maxim by any form of conduct that, in the eyes of honest and fair-minded men, may properly be condemned and pronounced wrongful." (30 Cal.Jur.3d, Equity, § 26, p. 464.) Respondent's alleged conduct cannot be said to have been within this description. He was

faced with a neighbor who undertook a self-help remedy which threatened respondent's use of his property; respondent reacted with a self-help remedy to protect such use. The initial outcome of the confrontation was the commencement of settlement negotiations. Appellant did not experience prejudice to his rights which would have made it inequitable to grant respondent the relief he sought. (See *Tinney* v. *Tinney* (1963) 211 Cal.App.2d 548, 555 [27 Cal.Rptr. 239].)

Appellant described a second incident which occurred after the assistance of the court had been sought by respondent but prior to a hearing on the matter—appellant had his workmen add six posts to the newly-constructed fence; respondent removed these additional posts, necessitating a second placement and a security guard to prevent removal before the concrete dried. Appellant was aware of respondent's claim to an easement by the events of the previous month and by respondent's filing of the within action five days earlier. His continuation of construction after objection by respondent suggests a lack of good faith. (See *Brown Derby Hollywood Corp.* v. *Hatton* (1964) 61 Cal.2d 855, 859 [40 Cal.Rptr. 848, 395 P.2d 896].) "Traditionally, the doctrine of unclean hands is invoked when one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct. [Citations.]" (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 727 [39 Cal.Rptr. 64].) ██ Whether a party is within the application of the maxim of unclean hands is primarily a question of fact. (*Platt* v. *Wells Fargo Bank* (1963) 222 Cal.App.2d 658, 664 [35 Cal.Rptr. 377].) ██ We find no abuse of discretion in the trial court's determination that under the facts of this case, respondent is not barred from relief by the doctrine of unclean hands.

The order is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.