[No. B010114. Second Dist., Div. One. July 31, 1986.]

MICHAEL A. MESNICK, Plaintiff and Respondent, v.
GEORGE W. CATON, Defendant and Appellant.

Counsel

Lawler, Felix & Hall and Wayne S. Grajewski for Defendant and Appellant.

Davis & Davis and M. Stephen Davis for Plaintiff and Respondent.

Opinion

HANSON (Thaxton), J.—

INTRODUCTION

This case involves a dispute between two neighbors whose property is divided by a fence which stands several feet inside the legal boundary described in plaintiff's deed.

On November 20, 1981, Michael Mesnick (plaintiff and/or Mesnick), seeking to regain the land beyond the fence, filed a complaint for declaratory relief to establish boundary and quiet title, for tresspass/ejectment, for damages, and for an injunction. The complaint named George W. Caton (defendant and/or Caton) as the defendant, and 10 unnamed defendants who might claim some interest in the disputed real property.

As relief, the complaint requested that the court determine the correct boundary between the lots; that it quiet title to the disputed property in plaintiff as owner in fee; that it enjoin defendants or his representatives from asserting any interest in the disputed property, from maintaining a fence, or from interfering with plaintiff's relocation of the fence to the correct boundary; that it award $25,000 general damages, or according to proof; and that it award attorney's fees and costs of suit.

On December 2, 1981, defendant Caton, claiming that earlier lot owners had agreed to set the boundary by placement of the fence, answered the complaint with denials and six affirmative defenses. He also filed a cross-complaint for declaratory relief and to quiet title. Plaintiff Mesnick answered the cross-complaint, with denials and affirmative defenses, on January 5, 1982.

After hearing oral argument on April 23, 1982, the trial court denied defendant's March 9, 1982, motion for summary judgment. The court's minute order of May 5, 1982, stated the grounds of that denial as follows: "Motion denied. There is a factual issue as to whether there was uncertainty of boundry [sic] line when the alleged 'agreed boundry' [sic] was created

and whether the original abutting land owners intended the fence to be an "agreed boundry [*sic*]."'"

After submission of trial briefs, a nonjury trial was held in the Superior Court of Los Angeles County (Hon. Earl F. Riley, judge presiding). The court rendered judgment for the plaintiff. The trial judge filed a memorandum of intended decision on December 14, 1982.

The judgment, filed November 20, 1984, ordered that the boundaries of plaintiff's and defendant's respective lots conform to those in the legal descriptions of the property; that the disputed property is confirmed to plaintiff Mesnick, and title quieted in Mesnick; that Mesnick has possession and use of all the property he owns, including the disputed property; and that Mesnick may remove the existing fence, and may build a new one on the boundary. The judgment also denied Caton's claims set forth in his cross-complaint, and entered judgment and awarded costs of suit to Mesnick.

Defendant filed a notice of appeal on January 11, 1985.

FACTS

Plaintiff and defendant own adjoining residential lots in Los Angeles. Mesnick owns lot 8, acquired in October 1978, and Caton owns lot 9, acquired in 1971. A dilapidated grapestake fence, constructed on concrete foundations, stands between the lots.

On December 15, 1980, a surveyor conducted a survey of plaintiff's lot, and upon comparing the results to the legal description, he discovered a discrepancy between the boundary in the legal description and the grapestake fence. The fence was not a straight line, but was angled, lined by shrubbery, and somewhat in need of maintenance. The surveyor testified that the fence was located entirely on plaintiff Mesnick's lot. This placement diminished plaintiff's lot, and enlarged defendant's lot, by 319 square feet.

Plaintiff Mesnick had hired the surveyor as part of a series of improvements to his property, including a swimming pool. Mesnick asked Caton to remove the fence from its existing location to the survey line, but Caton refused.

A neighbor testified that the fence had been in place since 1955, and that earlier owners of lots 8 and 9 had not engaged in any argument or discussion regarding the boundary line.

ISSUES

Defendant on appeal argues that: 1) the trial court erroneously denied Caton's motion for summary judgment; 2) the trial court erroneously failed to find an agreed boundary; 3) the trial court erroneously failed to find title in defendant Caton by adverse possession; 4) the trial court erroneously failed to find a prescriptive easement; and that 5) the trial court erroneously excluded evidence showing respondent's unclean hands and his encroachment upon his neighbor's property.

DISCUSSION

I

■ Defendant Caton first contends that the trial court erroneously denied his motion for summary judgment. An order denying a summary judgment motion, as an intermediate ruling before judgment, is not appealable. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 303, at p. 598; *Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 459 [202 Cal.Rptr. 222].) Defendant's appeal from the final judgment includes the claim that the trial court erroneously denied defendant's motion for summary judgment. This claim is only reviewable from the final judgment. "The litigant whose motion [for summary judgment] has been denied has a direct appeal *only* from the judgment following trial if he is unsuccessful there." (*Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435, 441 [84 Cal.Rptr. 421].) (Italics added.)

II.

■ Secondly, defendant Caton claims that the trial court erroneously failed to find an agreed boundary. We conclude that this claim lacks merit.

■ In *Vella* v. *Ratto* (1971) 17 Cal.App.3d 737, 739 [95 Cal.Rptr. 72], the court set forth the five elements a claimant must prove to satisfy the doctrine of agreed boundary: "(1) an uncertainty as to the true position of the boundary, (2) an agreement to establish a common boundary line, (3) marking or building up to the agreed boundary, (4) occupation of the real property to such line, and (5) acquiescence in the line thus established for a period equal to the statute of limitations."

We also note that the party asserting the doctrine in a cross-complaint or as an affirmative defense bears the burden of proving each required element. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1004, pp. 425-426;

*Piercy* v. *Sabin* (1858) 10 Cal. 22, 27; *Vaughn* v. *Coccimiglio* (1966) 241 Cal.App.2d 676, 678 [50 Cal.Rptr. 876].)

 In the case at bench, the main difficulty centers on the first three elements necessary to this claim: an uncertainty about the boundary's true position; an agreement to establish a common boundary; and marking or building up to the agreed boundary.

As the defendant concedes, the only evidence before the court regarding uncertainty was that the fence had existed since 1955. A neighbor who had lived on adjacent property for 27 years testified for the defense that he knew of no arguments or discussions regarding the disputed boundary line.

No other evidence was offered to prove this essential element. Defendant cites *Vella* v. *Ratto, supra,* 17 Cal.App.3d 737, 741-742, to argue that circumstantial evidence of long use and acquiescence compels the court to find "uncertainty as to the true boundary at the time the original grantor and grantee fixed the property lines by an implied agreement."

In *Vella,* the fence line had been established 44 or more years before the dispute. By contrast, in the case at bench the time involved was considerably less, and defendant made no showing that evidence concerning the intent and belief of the owners who built the fence was unavailable. In *Vella,* a former owner of the disputed property testified about its use as cultivated orchard and vineyard land, and about the placement of fences surrounding the disputed land, which amounted to approximately two acres. Finally, in *Vella* the court heard direct evidence that plaintiff and defendant landowners took title to their property as bounded by the fencing. All these circumstances vary markedly from those in the case at bench, and suggest that *Vella* does not control here.

 The agreed boundary doctrine exists "to secure repose and prevent litigation." (*Mission Co.* v. *Aviation Finance* (1974) 38 Cal.App.3d 489, 494 [113 Cal.Rptr. 223].) While these rationales indeed may be the doctrine's purposes, they nonetheless do not invariably describe its effect. In the case at bench, the doctrine seems only to have stiffened the resolve to disagree and to litigate, despite a readily ascertainable, accurate boundary contained in the legal description.

Relying upon a legal description to settle disputes of the kind present here seems far more sound. The law should prefer boundaries the legal description sets, or else it is hard to see why such records exist. The doctrine of agreed boundaries should most plausibly come into play when legal records fail to settle a boundary dispute. That failure may occur when records

never existed, have been destroyed, or are inaccurate, or when the natural features or surveyors' monuments or corners have changed or vanished. (See, e.g., *Joaquin* v. *Shiloh Orchards* (1978) 84 Cal.App.3d 192, 195, 197 [148 Cal.Rptr. 495, 7 A.L.R.4th 46], and *Kunza* v. *Gaskell* (1979) 91 Cal.App.3d 201, 204 [154 Cal.Rptr. 101].)

Where no reliable legal description exists, the courts have resort to the agreed boundary doctrine. It is better than nothing. But the law should not employ a residual doctrine, a last legal resort, to disposses an owner of his land when a legal means of establishing an accurate boundary lies quite readily and conveniently to hand.

To be sure, the courts have applied this doctrine somewhat inconsistently. (See *Zachery* v. *McWilliams* (1972) 28 Cal.App.3d 57, 61 [104 Cal.Rptr. 293].) But we think the acute analysis in *Finley* v. *Yuba County Water Dist.* (1979) 99 Cal.App.3d 691 [160 Cal.Rptr. 423] is a more contemporary and persuasive statement of how and when to use this doctrine. The facts in *Finley* also have some significant resemblances to those of the case at bench.

The *Finley* court, in respect to the agreed boundary doctrine, said at page 700: "[I]t is not and was never intended to be a means of divesting an unconsenting landowner of his property[,] as is the case with the laws pertaining to adverse possession. It is not intended to subvert neighborliness or prudence whereby a neighbor allows another to use part of his land for the neighbor's (or their mutual) benefit, and this concept grows in importance as we progressively become a more congested society. [¶] Therefore, the mere fact that a landowner allows his neighbor to occupy or use part of his land does not automatically fix the boundary between them or give the neighbor a right to use or take the property in perpetuity. The doctrine rightfully rests on the intent of the parties, and determining such intent is the province of the trier of fact."

These considerations and rules guide the result in the case at bench. Given the state of the evidence, and the burden of proof, we conclude that the trial court could reasonably have found that the defendant's case fell short of establishing uncertainty of the boundary, or for that matter, marking the agreed boundary or an agreement to establish a common boundary. (On the latter point, see *Berry* v. *Sbragia* (1978) 76 Cal.App.3d 876, 881 [143 Cal.Rptr. 318]; where record shows no agreement as to boundary location, agreed boundary doctrine is inapplicable.)

The trial court's memorandum of intended decision drew attention to the fence's condition and to its irregular shape and contour; like the fence in *Finley*, it angled or bowed in a meandering fashion. That fact, the trial

court concluded, negated any inference or presumption of a dispute by earlier landowners which they had resolved by building the fence. Its curved or crooked shape, and its relatively impermanent, grapestake construction, support the trial court's refusal to make such inferences or presumptions.

Homeowners build fences for many reasons besides marking boundaries: to retain earth, to support or restrain shrubbery, to keep out intruders, to divide distinct areas in a garden, or to achieve aesthetic or purely ornamental purposes. Where a fence does not follow a straight line, and where no evidence exists about the original fencebuilders' intentions, it seems tenuous and even unjust to use the agreed boundary doctrine to dispossess a landowner of his land.

This is especially true where, in this residential, urban context, restoring this relatively small parcel to the plaintiff will benefit him tangibly, while the other claimant advances no discernible use, nor any circumstance suggesting that moving the fence would cause substantial loss. (*Ernie* v. *Trinity Lutheran Church* (1959) 51 Cal.2d 702, 707 [336 P.2d 525].) (Unlike *Kunza* v. *Gaskell, supra,* 91 Cal.App.3d 201, 205-209, the case at bench does not resemble a situation where a defendant produces no credible evidence to support his claim of ownership in disputed land, and entered precipitously, used earth-moving equipment to destroy a fence and a stand of trees, and parked automobiles on the parcel.)

In the case at bench, quieting title in the legal owner offers him a tangible benefit, saves him money in constructing improvements, and enhances his use of the remainder of his lot. The defendant claiming under the agreed boundary doctrine, by contrast, presents no evidence that replacement of the fence will impair the use of his lot.

Given these circumstances and the state of the facts and law, we affirm the trial court's judgment on this issue.

### III.

Thirdly, defendant claims that the trial court erroneously failed to find title by adverse possession.

The elements necessary to perfect a claim for adverse possession are: (1) tax payment, (2) occupation, which is (3) open and notorious, (4) continuous, (5) hostile to the true owner, and (6) under a claim of title. (*Gilardi* v. *Hallam* (1981) 30 Cal.3d 317, 321 [178 Cal.Rptr. 624, 636 P.2d 588]; *Taormino* v. *Denny* (1970) 1 Cal.3d 679, 686 [83

Cal.Rptr. 359, 463 P.2d 711]; *Thomas* v. *England* (1886) 71 Cal. 456, 458-459 [12 P. 491].)[1]

■ The trial court's memorandum of intended decision found from defendant's deposition and trial testimony that he intended to claim only the land that extended to his property line as described in the legal records. Though the memorandum conceded that this testimony was subject to two interpretations, substantial evidence supports the trial court's choice between them. Thus we do not disturb that finding on appeal, and affirm the trial court's conclusion that hostile use of plaintiff's land was absent.

Though hostile possession and claim of right may be established when the occupancy occurred through mistake (*Gilardi* v. *Hallam, supra,* 30 Cal.3d 317, 322), the claimant's possession must be adverse to that of the record owner, "unaccompanied by any recognition, express or inferable from the circumstances[,] of the right in the latter." (*Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 459 [196 P.2d 900].)

We note the Supreme Court's discussion in *Sorensen* v. *Costa, supra,* 32 Cal.2d 453, 459-460, of *Holzer* v. *Read* (1932) 216 Cal. 119 [13 P.2d 697] and *Woodward* v. *Faris* (1895) 109 Cal. 12 [41 P. 781]. The case at bench resembles the latter. In *Woodward,* the trial court found that the adverse claimant intended only to claim the land described in his deed, without any intention to claim disputed land. In the case at bench, there does appear to have been a mistaken *belief* as to the true, legal boundary. But the trial court found that the defendant claimed only what was his, and it interpreted that to mean that he did not occupy plaintiff's land under a claim of right.

■ The *Gilardi* court points out that adverse possession may be based on mistake, and "rejection of the mistaken possession may not be based on *speculation* that the possessor might not have occupied the land had he known of the record title. Rather to show that the possession based on mistake was not hostile and adverse it must be established by substantial evidence that the possessor recognized the potential claim of the record owner and expressly or impliedly reflected intent not to claim the occupied land if record title was in another." (*Gilardi* v. *Hallam, supra,* 30 Cal.3d 317, 323-324.) ■ This "intent not to claim unowned land" is just

---

[1]*Gilardi* has phrased two of these elements as "open and notorious *use or possession.* . . ." (Italics added.) *Gilardi* cites *Taormino* v. *Denny, supra,* 1 Cal.3d 679, 686. *Taormino,* however, used the "use or possession" phrase in the context of drawing attention to the similarity between elements necessary to prescriptive easements and those necessary to adverse possession. Thus it phrased the matter in the alternative. Quoted out of context, however, the phrasing "use *or* possession" obscures an important distinction. Use pertains solely to easements, while possession applies only to adverse possession. (3 Witkin, Summary of Cal. Law (8th ed. 1973) § 44, p. 1811.)

what the trial court found, and unlike *Gilardi,* substantial evidence supports its finding. (*Id.,* at 324, 326.) Thus the element of hostility is absent.

Moreover, the trial court also found the evidence "totally insufficient to establish that defendant had paid the taxes on the disputed property. . . ." The adverse claimant bears the burden to establish that no taxes were assessed against the land, or that if assessed he paid them. (*Glatts* v. *Henson* (1948) 31 Cal.2d 368, 372 [188 P.2d 745]; *Raab* v. *Casper* (1975) 51 Cal.App.3d 866, 878 [124 Cal.Rptr. 590].)

 Defendant testified that he paid the taxes assessed on his property, and had a conversation with a representative from the county assessor's office who walked the street during his visual inspection of all the property in the neighborhood. The defense also introduced tax assessor's records into evidence to show that a visual inspection was made, though the evidence of a tax assessor's visual inspection made no reference to the fence, or to whether the fence was even visible from the street.

The trial court based its finding on this evidence, which it found insufficient to establish that defendant paid taxes on the disputed property. Substantial evidence supported this finding. The adverse claimant's failure to pay taxes on the land he claims is fatal to his claim. (*Gilardi* v. *Hallam, supra,* 30 Cal.3d 317, 326-327.)

We affirm the trial court's judgment on this issue.

## IV.

 Defendant Caton next argues that the trial court erroneously failed to find he had a prescriptive easement over the disputed land. We conclude that this contention lacks merit.

 A party claiming establishment of a prescriptive easement must show (1) use of property which has been (2) open and notorious, (3) continuous, and (4) adverse for five years. (*Warsaw* v. *Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584].)

Establishment of these elements is a question of fact for the trial court, whose findings the reviewing court will not disturb where substantial evidence supports them. (*Id.,* at 570.) The party claiming the prescriptive easement bears the burden of proving each of its prerequisites. (Civ. Code, § 1007; Code of Civ. Proc., § 321; *Bennett* v. *Lew* (1984) 151 Cal.App.3d 1177, 1183 [199 Cal.Rptr. 241]; *Jordan* v. *Worthen* (1977) 68 Cal.App.3d 310, 319 [137 Cal.Rptr. 282].)

■ The elements necessary for a prescriptive easement resemble those necessary for adverse possession, but the doctrines are not identical nor are their prerequisites interchangeable. A successful claimant by adverse possession, for instance, gains title to property. By contrast, the successful claimant of a prescriptive easement gains not title, but the right to make a specific use of someone else's property. (*Cleary* v. *Trimble* (1964) 229 Cal.App.2d 1, 6 [39 Cal.Rptr. 776]; Hagman & Maxwell, 10 Cal. Real Estate Law and Practice (1986) Ownership and Management, ch. 343, § 343.26, pp. 48-48.1.)

Occupancy with claim of possession and title thus remains quite different from restricted, partial, or intermittent use. ■ "An easement involves primarily the privilege of *doing* a certain *act* on, or to the detriment of, another's property." (Italics added.) (*Wright* v. *Best* (1942) 19 Cal.2d 368, 381 [121 P.2d 702]; Tiffany, 3 Real Property (3d ed. 1939) Easements, § 756, at p. 200; see also *Highland Realty Co.* v. *City of San Rafael* (1956) 46 Cal.2d 669, 682 [298 P.2d 15]; *People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 415 [196 P.2d 570, 6 A.L.R.2d 1179]; 3 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1977) Easements, § 18:35, at pp. 320-321.)

■ In the case at bench, defendant did not show what, if any, *use* he made of the disputed property. Some shrubbery grew on both sides of the fence. However, defendant did not claim the disputed property was necessary for drainage, crops, recreation, transportation, ingress and egress, or other activity which has been found to be a basis for a prescriptive easement. Defendant did not maintain the fence, and its mere construction does not create an easement. (*Berry* v. *Sbragia, supra,* 76 Cal.App.3d 876, 881.) It seems neither logical nor just that disuse and inactivity should belatedly qualify defendant for a prescriptive easement over plaintiff's property.

Moreover, lack of use not only prevents a prescriptive easement from arising, it precludes its enforceability. The character of use determines an easement's scope. (*Pipkin* v. *Der Torosian* (1973) 35 Cal.App.3d 722, 726 [111 Cal.Rptr. 46]; *Welsher* v. *Glickman* (1969) 272 Cal.App.2d 134 [77 Cal.Rptr. 141], 137; Civ. Code, § 806.)

Lack of use thus makes it impossible to describe with any specificity the right defendant would have over plaintiff's land even if he owned an easement. ■ An easement is a restricted right to specific, limited, defineable use or activity upon another's property, which right must be *less* than the right of ownership. ■ It is difficult to see how defendant's claim to use of plaintiff's property, given the facts of this case, differs from occupancy, or ends short of possession.

Accordingly, by reason of the foregoing and having previously affirmed the trial court's finding that Caton's possession of the disputed land was not "adverse" to that of record owner Mesnick, we affirm the trial court's judgment with regard to this issue.

## V.

The defendant finally asserts that the trial court erroneously excluded evidence proving plaintiff's unclean hands, and of plaintiff's encroachment upon another neighbor's property. Both of these claims lack merit.

## A.

 At trial, the defense tried to introduce expert testimony that plaintiff encroached upon his northerly neighbor's lot. The trial court sustained plaintiff's objection to the evidence as irrelevant.

On appeal, defendant claims this testimony was relevant to show that the agreed boundary and adverse possession doctrines applied to the facts of the case at bench. Defendant argued before the trial court that those doctrines exist to secure the repose of property owners and prevent litigation over boundaries. Because plaintiff's encroachment raised the prospect of further litigation, so the argument went, it called for the application of those doctrines.

Under California Evidence Code section 210, "relevant evidence" means evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Only relevant evidence is admissible (Evid. Code, § 350), and "it must tend logically, naturally and by reasonable inference to establish a material fact." (*Brokopp* v. *Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853 [139 Cal.Rptr. 888].) The law vests wide discretion in the trial court to decide the relevance of proferred evidence. (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 787 [174 Cal.Rptr. 348]; *San Diego Gas & Electric Co.* v. *Davey Tree Surgery Co.* (1970) 11 Cal.App.3d 1096, 1103 [96 Cal.Rptr. 889].)

The substantive law of the case primarily determines what constitutes a material, disputed fact. (*Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 604-605 [208 Cal.Rptr. 899].) We add that the appellate courts traditionally defer to a trial court's determination unless there appears a clear abuse of discretion on a matter of such significance that an injustice has occurred. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled

to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . ." (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].)

Considering our review of the substantive law relating to the case at bench, and the rules we have just recited, we affirm the trial court's ruling excluding this evidence as irrelevant and immaterial.

B.

The plaintiff's complaint sought a permanent injunction to prevent defendant from claiming any interest in the disputed property, to prevent defendant from maintaining any fence on plaintiff's property, and to prevent defendant from interfering with the fence's removal and relocation by plaintiff.

Defendant argues that plaintiff's supposed encroachment upon the property of his northerly neighbor—who is not a party to this litigation—requires the invocation of the familiar maxim that equity may refuse to grant relief to a plaintiff who comes into court with unclean hands. "[Plaintiff's] hands are rendered unclean within the purview of the maxim by any form of conduct that, in the eyes of honest and fair-minded men, may properly be condemned and pronounced wrongful." (*Bennett* v. *Lew, supra,* 151 Cal.App.3d 1177, 1186.)

Ordinarily, however, this maxim applies to conduct between the litigants themselves, not to conduct of a litigant towards a nonparty. The courts cannot use this doctrine to penalize a litigant's supposed inequitable conduct which is both unrelated to a matter before the court and addressed toward a party not involved in that pending matter. (*Pond* v. *Insurance Co. of North America* (1984) 151 Cal.App.3d 280, 289-290 [198 Cal.Rptr. 517]; *Moriarty* v. *Carlson* (1960) 184 Cal.App.2d 51, 56-57 [7 Cal.Rptr. 282]; *Fibreboard Papers Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728 [39 Cal.Rptr. 64].)

This elementary limitation upon the unclean hands doctrine dispenses with defendant's claim. We affirm the trial court's judgment relating to this issue.

## Disposition

The judgment of the trial court is affirmed. Each party to bear his own costs on appeal.

Spencer, P. J., and Epstein, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.