Filed 5/28/21  Valencia v. Board of Registered Nursing CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JANET ANNE BAENA VALENCIA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BOARD OF REGISTERED NURSING, <br><br> Defendant and Respondent. | A159249 <br><br> (Contra Costa County Superior Court No. N18-1358) |

The Board of Registered Nursing (BRN), filed a disciplinary accusation against Janet Valencia, a registered nurse, for alleged unprofessional conduct.  After an administrative hearing and decision, the BRN upheld the charge and issued a public reproval.

Valencia filed a mandamus petition in the superior court challenging the BRN's disciplinary decision.  The court granted writ relief, reversed the decision and ordered it expunged, finding that the "[BRN] abused its discretion as there was no clear and convincing evidence supporting [any] disciplinary action against . . . Valencia's license."

Unsatisfied, Valencia appeals the judgment in her favor, arguing the trial court (1) should have ruled that the BRN violated her due process rights and abused its discretion by making its decision effective immediately, thereby depriving her of the right to seek reconsideration or a stay and

1

impairing her right to seek judicial review, (2) correctly found that the BRN's disciplinary action was unsupported by the evidence, but should have applied a more rigorous standard of review in so finding, and (3) should have decided for her on the additional ground that the "routine error" in her operation of a residential care facility was wholly outside of "nursing functions," and thus not within the purview of BRN's statutory disciplinary authority.

Because Valencia secured all the relief to which she is entitled in the writ proceedings before the superior court, we conclude she is not an aggrieved party and thus lacks standing to appeal under Code of Civil Procedure section 902.  We therefore dismiss this appeal.

## I.

The BRN filed an accusation against Valencia, alleging she had subjected her registered nurse license and public health nurse certificate to discipline for the unprofessional conduct of gross negligence.[1]  (See § 2761, subd. (a)(l); Cal. Code Regs., tit. 16, § 1442.)  The BRN sought an administrative decision revoking or suspending Valencia's registered nurse license and her public health nurse certificate.  The BRN also sought an order

---

[1] All further statutory references, unless otherwise designated, shall be the Business and Professions Code.  Section 2761, subdivision (a), authorizes the BRN to take disciplinary action against a licensed nurse for, among other things, "[u]nprofessional conduct, which includes, but is not limited to, the following:  [¶] (1) Incompetence, or gross negligence in carrying out usual certified or licensed nursing functions."  (§ 2761, subd. (a)(1).)  As used in section 2761, " 'gross negligence' includes an extreme departure from the standard of care which, under similar circumstances, would have ordinarily been exercised by a competent registered nurse.  Such an extreme departure means the repeated failure to provide nursing care as required or failure to provide care or to exercise ordinary precaution in a single situation which the nurse knew, or should have known, could have jeopardized the client's health or life."  (Cal. Code Regs., tit. 16, § 1442.)

2

requiring Valencia to pay the BRN for the reasonable investigation and enforcement costs of the case. (See § 125.3.)

**A.**

The BRN's accusation arose out of an incident concerning the administering of medication to a resident at a "non-nursing" residential care facility for the elderly (RCFE), owned and operated by Valencia. RCFE's are licensed by the Community Care Licensing Division of the Department of Social Services. RCFE's do not require a licensed nurse, but applicants must demonstrate they have successfully completed a certification program approved by the Department. (Health & Saf. Code, § 1569.23; Cal. Code Regs., tit. 22, §§ 87405, 87411.)

Evidence gathered by the BRN revealed that, for a period of a few weeks in the spring of 2015, a resident of the RCFE did not receive the proper dosage of certain medication. Valencia was not in charge of administering medication herself at the RCFE. Rather, she had a supervisorial role. Unlicensed RCFE care staff—trained, monitored, and supervised by Valencia—would "assist residents with self-administered medications." (Cal. Code Regs., tit. 22, § 87465, subd. (a)(5).) Valencia processed residents' initial prescriptions and thereafter reviewed the medication administration records the first of each month.

According to the evidence presented by the BRN at Valencia's disciplinary hearing, the specific circumstances that led to the accusation against her are these. In February 2015, a 93-year-old female was admitted to Valencia's RCFE. The resident had a physician's medication order for metolazone (referred to as "water pills" in the accusation), which her son would bring to the RCFE each month. In March 2015, he brought 5-milligram tablets to be taken once per day. In April 2015, he brought

3

2.5-milligram tablets to be taken twice per day. A dosing error occurred from April 6 to May 4, 2015, and the resident was given the 2.5-milligram tablet only once per day.

On May 15, 2015, the medication dosing error was discovered during an unannounced investigation of the RCFE by the Department of Social Services. An audit of the medication—conducted via a pill count—revealed the metolazone had not been administered in accordance with the physician's order. There was no harm to the resident from the error.

**B.**

To determine if the incident warranted discipline against Valencia's nursing license and certificate, a hearing was held before an Administrative Law Judge (ALJ) on February 12, 2018. The ALJ's proposed decision, issued March 7, 2018, found cause to discipline Valencia's license for gross negligence in carrying out a usual certified or licensed nursing function. (§ 2761, subd. (a)(1).)

The ALJ determined that Valencia "failed to adequately train, monitor and supervise the unlicensed care staff resulting in the incorrect dosage of [m]etolazone being administered to Resident for 28 days." Rather than impose a penalty of revocation, suspension, or probation on Valencia's license, the ALJ found that the public would be adequately protected by the issuance of a public reproval pursuant to section 495. The public reproval, the ALJ opined, would "inform potential employers about this incident should [Valencia] seek a supervisory position in nursing."

The BRN adopted the ALJ's proposed decision, issuing a public reproval to be placed in Valencia's permanent license record with the BRN. The public reproval—stating Valencia committed "gross negligence in carrying out usual certified or licensed nursing functions"—was published on

4

the Department of Consumer Affairs' website. In selecting the level of discipline to impose, the BRN reasoned that this was Valencia's first disciplinary action. It noted that Valencia "presented at hearing in a truthful manner" and "fully cooperated with the investigation. . . . The error involved one resident; there was no actual harm to the resident or actual harm to the public. Once the error by care staff was detected, [Valencia] took steps to retrain the care staff" and she was compliant with both agencies.

Ultimately, the BRN opined that "[w]hat is missing in this case, however, is recognition by [Valencia] that her conduct fell short of what is expected of a registered nurse. . . . [She] has not demonstrated that she has accepted responsibility for failing to have appropriate safeguards in place so that the error did not occur at all, or could have been detected much sooner." In addition to ordering public reproval, under section 125.3 the BRN ordered Valencia to pay the BRN its investigation and enforcement costs, totaling $4,215.

The BRN issued its decision and order on May 23, 2018, making it effective on that date. The BRN did not give prior notice that it was considering making the discipline imposed on Valencia immediately effective. While this is a discretionary choice held by the BRN, it had the effect of eliminating any possibility for Valencia to ask the BRN to reconsider and shortened the time for her to seek judicial review by writ of mandamus.[2] But it did not prevent her from seeking review, or impair her ability to do so in a

---

[2] Government Code section 11519, subdivision (a) ("The decision shall become effective 30 days after it is delivered or mailed to respondent unless: a reconsideration is ordered within that time, or the agency itself orders that the decision shall become effective sooner, or a stay of execution is granted"); see *Eichman v. Escondido Union High School District* (1964) 61 Cal.2d 100, 102; *Ginns v. Savage* (1964) 61 Cal.2d 520, 525; *Moran v. State Board of Medical Examiners* (1948) 32 Cal.2d 301, 304.

material way, since as we explain below, she successfully challenged the BRN's decision by writ.

## C.

On June 21, 2018, Valencia filed a petition for writ of administrative mandate in superior court seeking to compel the BRN to set aside its decision. She also requested that the court render a statement of decision, pursuant to Code of Civil Procedure section 632.

Because the ALJ found that Valencia did not personally administer medications to residents at her residential care facility, the question presented in the writ proceedings was whether Valencia's "training, monitoring and supervision of her care staff, relating to the administration of medication, rose to the level of gross negligence." Disciplinary action could be justified only upon a stringent burden of proof. To impose discipline, the BRN "had to find, by clear and convincing evidence, that [Valencia's] training, monitoring, and supervision was an extreme departure from the standard of care, which would have ordinarily been exercised by a competent registered nurse."

The superior court filed its statement of decision in September 2019, granting Valencia a writ of administrative mandate and issuing a peremptory writ. The court concluded that the key findings underlying BRN's disciplinary decision—that Valencia's training, monitoring, and supervision of her staff was an extreme departure from the ordinary standard of care, or grossly negligent—were not supported by the weight of the evidence. Exercising its independent judgment, the court found the BRN "abused its discretion as there was no clear and convincing evidence supporting the disciplinary action against [Valencia's] license." The court also found the BRN's order for Valencia to pay the BRN's enforcement and

6

investigation costs "violate[d] her right to due process and was an abuse of discretion because the accusation sought revocation or suspension and the [BRN] did not find ground to revoke or suspend the license."

In some respects, however, the court ruled against Valencia. For example, Valencia argued that, by making its decision immediately effective, the BRN cut off her right to seek reconsideration and impaired her right to seek judicial review, thus violating due process rights and abusing its discretion. Valencia also argued that, because the alleged medication error was neither an error she personally made nor did it occur in the course of her duties as a registered nurse, the discipline imposed went beyond the BRN's statutory authority. These issues were not outcome-determinative. If the court had ruled for Valencia on either one, the result would not have changed. She would still have prevailed, but based on different reasoning that she now asks us to endorse.

After Valencia prevailed in superior court, the BRN issued an order after remand, vacating and setting aside its May 23, 2018 decision, dismissing the accusation against Valencia, and expunging all related adverse information from the public records. The BRN's order after remand was issued and became effective on November 18, 2019.

This timely appeal followed.

## II.

A fundamental limitation on our power as a judicial tribunal is that we decide " ' "actual controversies by a judgment which can be carried into effect" ' " and do not " ' "give opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) This principle applies

7

in the trial and appellate courts. In the appellate context, it classically applies in circumstances where, no matter how we resolve an appeal, we cannot grant effective relief—in short, where the issues raised are not only academic, but beyond the power of courts to redress.

Invoking the mootness exception for issues of " ' " 'substantial and continuing public interest' " [that are] . . . capable of repetition yet evade[] review' " (*Amgen Inc. v. California Correctional Health Care Services* (2020) 47 Cal.App.5th 716, 728–730), Valencia urges us to resolve her appeal on the merits despite her success in obtaining relief below. "Because the arbitrary deprivation of statutory protections by making license discipline effective immediately violates due process," she argues, "an opinion restricting the practice will support an award of fees under the Civil Rights Act." And more broadly, with respect to all three issues she raises, she contends, "[t]he enforcement of important rights affecting the public interest also will benefit the general public and state licensees, which will support 'private attorney general' fees under Code of Civil Procedure section 1021.5."

We do not question the importance of fee recovery to effective enforcement of the rights asserted here, but we do question whether the prospect of future fee recovery is sufficiently concrete to justify a ruling that she has standing to appeal. The argument that, despite Valencia's victory below, a more comprehensive victory would give her a better chance at attorney fee recovery prompted us to ask for supplemental briefing on the issue of whether she is an aggrieved party with standing to appeal. Having reviewed the parties' supplemental submissions, we now conclude that, even if the public interest exception to the mootness doctrine might arguably apply on the ground that, as Valencia puts it in her supplemental brief, "[m]any hundreds of thousands of licensees are subject to the state's practice of

8

arbitrarily making disciplinary decisions effective immediately without cause and the constitutionally deficient substantial evidence standard of review," we must dismiss this appeal because Valencia is not an aggrieved party and therefore lacks standing.

Under Code of Civil Procedure section 902, "Any party aggrieved may appeal in the cases prescribed in this title." Though doubts are resolved under this statute in favor of the right to appeal (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540), the requirement that only an aggrieved party has standing to appeal is strictly applied by appellate courts. (See *Kunza v. Gaskell* (1979) 91 Cal.App.3d 201, 206 ["The rule is strictly applied by reviewing courts which hold generally that only *aggrieved* parties may appeal."].) "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) Something more than conjecture and speculation about future harm is required to support standing under Code of Civil Procedure section 902. (Cf. *Aetna Life Ins. Co. v. Haworth* (1937) 300 U.S. 227, 240–241 [A justiciable controversy "must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citations.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."]; *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 169–172.)

*Grant v. Board of Medical Examiners* (1965) 232 Cal.App.2d 820, cited by the Board, is on point. In that case, the appellate court held that a

9

physician was not aggrieved by an administrative proceeding where the Board of Medical Examiners dismissed a disciplinary accusation after hearing, notwithstanding findings by the hearing officer that the physician had committed unprofessional conduct. (*Id*. at pp. 824–828.) Holding that " 'a party is not aggrieved by, and cannot appeal from, a judgment which is entirely in his favor,' " the court declined to review a decision that "was *favorable* to appellant." (*Id*. at p. 828.) "It is difficult to conceive how appellant's action below could have secured more beneficial results for him," the court explained. (*Ibid*.)

The same thing may be said here, since the BRN's decision was not only ordered vacated but expunged from the public record. Other than generalized references to the prospect of future fee recovery, Valencia vaguely alludes to collateral consequences in future disciplinary proceedings and to reputational harm. The record shows Valencia has not worked as a nurse since 2013, that she no longer owns and operates the RCFE where the incident at issue in this case arose, having sold the business, and that she is currently engaged in operating a "durable medical equipment company" and "a business to provide transportation services for clients[]and caregivers to private homes."

There is no evidence that Valencia's sale of the RCFE at issue was connected to the BRN's disciplinary proceedings or that Valencia's reputation was demonstrably harmed by suffering discipline that was later overturned. And even assuming it is true, as Valencia's counsel represented at oral argument that she is now in an occupation that requires her to use her license—an extra-record fact presented in violation of California Rules of Court, rule 8.252, we might add—we have no basis to conclude, as the court did in *Apple, Inc. v. Franchise Tax Bd*. (2011) 199 Cal.App.4th 1, that she is

10

"engaged in a present controversy involving the same issues . . . against the same party" (*id*. at p. 14, fn. 17) or that there is reason to believe such a dispute may arise in the future.

We are therefore left to conclude that this appeal is being pursued as a means to pave the way for later collection of attorney fees by her counsel.[3] On this record, that is insufficient to establish aggrievement under Code of Civil Procedure section 902. To the extent Valencia suffered aggrievement because of the court's denial of her Government Code section 800 fee application, that issue could have been appealed but was not, and thus has been forfeited. We arrive at this conclusion without criticism or disparagement of counsel's work, or of the significance of the issues presented here. Without intimating any view as to the issue of entitlement to attorney fees, we simply conclude that, on this record, Valencia is not an aggrieved party entitled to appeal a judgment entered in her favor. The issues raised in this case must await decision in some future case presenting a justiciable controversy.

_____

[3] The trial court's statement of decision granting writ relief denied Valencia's request under Government Code section 800 for attorney fees incurred in the administrative proceedings. In its judgment, however, the trial court retained jurisdiction for purposes of enforcing the writ and also to consider any application for attorney fees and costs Valencia may make in the future. It also extended the time for Valencia to move for recovery of attorney fees to 60 days following the issuance of a remittitur in this appeal. At oral argument, Valencia's counsel characterized the court's denial of her Government Code section 800 fee application as a "preliminary decision"— every statement of decision is preliminary to the judgment it explains—and in the briefing and at oral argument represented that he expects to seek private attorney general fees under Code of Civil Procedure section 1021.5. We read the judgment to encompass the denial of the Government Code section 800 attorney fees, while reserving jurisdiction to entertain a Code of Civil Procedure section 1021.5 request.

11

## DISPOSITION

The appeal is dismissed.

STREETER, Acting P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.